IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                  CR. No. 17-370 JCH

IMAD AYSHEH, *also known as*
IMAD MANASSRA, IYAD AYSHEH,
NEDAL AYSHEH, RAED AYSHEH and
NAEL ALI,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendants' motions [Docs. 242 and 280] challenging the admissibility of the testimony of the Government's expert witness on Native American jewelry, Liz Wallace. Also before the Court is the Government's motion [Doc. 276] challenging the admissibility of certain portions of the testimony of Janet McHard, the Defendants' expert accountant and fraud examiner. On June 13, 2023, the Court held a hearing on the motions at which all parties were represented by counsel. Defendant Nedal Aysheh was present in the courtroom. Defendant Raed Aysheh appeared by telephone, while Defendants Iyad and Imad Aysheh waived their appearances. No party elected to present evidence, and therefor the Court heard oral argument only.

**I.    LEGAL STANDARD**

Under Federal Rule of Evidence 702, the district court has an important gatekeeping function with regard to the admissibility of expert opinions to ensure that all evidence is both relevant and reliable. *See generally Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 597 (1993). In order to

determine whether Wallace and McHard's expert opinions are admissible, the court must undergo a two-step analysis. First, the court must determine whether the experts are qualified by "knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. Second, if they are so qualified, the court must determine whether their opinions are "reliable" under the principles set forth under *Daubert*, 509 U.S. 579, and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The reliability inquiry asks whether the methodology employed by an expert is valid—that is, whether it is based on sufficient data, sound methods, and the facts of the case. *See Kumho Tire*, 526 U.S. at 152.

Where the testimony is premised on experience and training rather than scientific knowledge, a court "need not apply the Daubert factors to determine [the testimony's] reliability." *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999). Rather, to evaluate the reliability of testimony based on the witness' experience, the court must "determine whether the expert's opinions are supported by sound reasoning and methodology." *Delsa Brooke Sanderson v. Wy. Hwy. Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020). Thus, when an expert states that their opinion is based on their experience without an explanation of how that experience led to their conclusions, the court may exclude the testimony. *Id*.

The proponent of the evidence has the burden of showing that expert evidence is admissible, by a preponderance of proof. *Daubert*, 509 U.S. at 592 n.10; *United States v. Orr*, 692 F.3d 1079, 1091 (10th Cir. 2012).

**II.   DISCUSSION**

  **A.   <u>Liz Wallace</u>**

   *1.   The nature of the testimony*

Count 1 of the Indictment charges the Defendants with a conspiracy to commit certain illegal acts. One of the object crimes of the alleged conspiracy is misrepresentation of Indian-produced goods and products in violation of 18 U.S.C. § 1159, which makes it "unlawful to offer

or display for sale or sell any good, with or without a Government trademark, in a manner that falsely suggests it is Indian produced . . ." Another object crime of the conspiracy is smuggling merchandise into the United States contrary to law, that law being 19 C.F.R. § 134.43(c), which provides that imported "Native American-style jewelry must be indelibly marked with the country of origin[.]" The regulation defines "Native American-style jewelry" as "jewelry which incorporates traditional Native American design motifs, materials, and/or construction and therefore looks like, and could possibly be mistaken for, jewelry made by Native Americans." 19 C.F.R. § 134.43 (c)(1).

In disclosing Wallace's testimony, the Government has produced the report [Doc. 243-1] of U.S. Fish and Wildlife Special Agent Sean Hyrons. According to that report, Hyrons met with Wallace and showed her the jewelry in question. The report contains a photo of each piece of jewelry in question and then lists the design elements that Wallace says are consistent with those used by Native American artists. The Government states that it will ask Wallace to describe various ways in which the jewelry resembles traditional Native American design motifs, materials and/or construction. However, the United States "intends to leave it to the jury to decide whether such resemblances look like, could possibly be mistaken for, or falsely suggest the jewelry is authentic." Doc. 243 at 9.

The Hyrons report adequately discloses the basis for Wallace's testimony.

### 2. The witness' qualifications

Wallace's curriculum vitae [Doc. 243-2] shows that she is a citizen of the Navajo Nation who grew up watching her parents make jewelry. She has attended various metalsmithing and jewelry-making classes and workshops, has won various awards for her jewelry, held a major

exhibition at the Wheelwright Museum of the American Indian, and had a fellowship with the Southwestern Association for Indian Arts.

The Court concludes that Wallace is qualified by training and experience to examine a piece of jewelry and point out design elements—such as materials, motifs, and construction—that are consistent with traditional Native American jewelry.

        3.      *Reliability*

The Defendants argue that Wallace's testimony should be excluded because she has applied no scientific method or analysis in reaching her opinions. Here, Wallace's method is to use her specialized knowledge and experience to compare the imported jewelry to traditional Native American-made jewelry and point out similarities between the two. Because of Wallace's experience and training, this method is a reliable basis for her opinions. Her method does not need to be quantified, based on data, or tested because it is based on her understanding of a field of artistry. Therefore, the Court agrees with the Government that under *Daubert*, the Court may apply a flexible standard that is applicable to non-scientific expertise. Defendants can attack the weight of Wallace's testimony and her conclusions using cross examination and argument.

        4.      *Other issues*

Defendants argue that Wallace's testimony should be excluded under Rule 403, claiming that its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. They also claim that Wallace's testimony may "evoke an emotion response in the jury" if she is labeled as an expert. Defendants do not explain how or why this could occur. They also contend that Wallace's proposed expert testimony is actually fact testimony, "because whether the designs 'resemble' Native American-style jewelry is something a juror can determine without the aid of an expert." [Doc. 280 at 7].

The Court disagrees with the Defendants' arguments. First, Wallace has specialized knowledge and training, and she is qualified as an expert. At the conclusion of the trial, the Court will instruct the jury on how to properly evaluate and weigh expert testimony, as it always does. There is no more risk that labeling her as expert will cause an "emotional response" in the jury than there is with any other expert. Second, Wallace's testimony will help the jury determine whether the imported jewelry meets the definition of "Native American-style jewelry" under 19 C.F.R. § 143.43(c)(1). Though the Defendants suggest that a jury can decide on its own if the imported jewelry satisfies that definition, the Court concludes that it is highly likely that at least some members of the jury may have little or no familiarity with the various styles of Native American-made jewelry. Wallace's testimony will be relevant and helpful. Third, Defendants have not pointed out any specific unfair prejudice or confusion that Wallace's testimony will cause.

Therefore, the Court concludes that Wallace's testimony should be admitted under Rule 702.

    B.    <u>Janet McHard</u>

        1.    *The nature of the testimony*

McHard, a certified fraud examiner, has reviewed the business and financial records maintained by the Defendants and their associated companies. Defendants offer her testimony to rebut the Government's assertion that Defendants both intended and conspired to violate laws governing the marking, importation, and sale of Native American-style jewelry.

Defendants' Notice of Expert Testimony [Doc. 275] regarding McHard lists nine opinions that she will discuss in her testimony. Of those nine, the Government takes issue with the first, eighth, and ninth opinions. The specific portions of each opinion to which the Government objects are italicized. They are:

1.  Both Imad's Jewelry and I Jewelry Wholesale, Inc. were created with appropriately filed documentation. Imad Aysheh and Iyad Aysheh appropriately applied for and received various business and tax registration documents. Iyad Aysheh applied for and received import permits from the US Fish and Wildlife Service in both 2014 and 2015. ***These actions are unlike businesses created and operating for nefarious purposes.***

8.  Year-end audited financial statements, under the Philippine Financial Reporting Standards for Small and Medium-sized Entities (SMEs), were also prepared, and all were in compliance and fairly represented. A company as small as Imad's Jewelry would be unlikely to have audited financial statements, and the fact that Imad's Jewelry did provides higher standard of assurance than other less-scrutinized forms of financial statements. These audited financial statements were then provided to Imad Aysheh's accountants in the United States to prepare 2014 tax returns. All these are actions would be taken by any legitimate small business owner. Hiring accounting tax professionals is an action undertaken to comply with required business rules and regulations. ***Those people who are perpetrating frauds do not generally hire outside qualified professionals to assist with financial and tax reporting.***

9.  ***When comparing and contrasting the business practices in this case with other similar cases, other cases had identified specific Native American jewelry, taken pictures of specific pieces, then copied those pieces, including the stamped hallmark. Defendants in other cases put marks on the jewelry which were the initials of well-known and established Native American artisans. These allegations are notably absent in the case against the Aysheh brothers. "IJ" is in fact, the initials of the manufacturer, Imad's Jewelry. There does not appear to be any attempt to copy an identifiable well-known or established Native American artisan hallmark.***

### 2. McHard's qualifications

According to her curriculum vitae, Janet McHard is a CPA, a certified fraud examiner, a master analyst in financial forensics, a private investigator, and a Chartered Global Management Accountant. She is certified in financial forensics. McHard appears to have a great deal of work experience in the fields of accounting and fraud examination, and she has experience presenting at professional conferences. She has been a faculty member at the Association of Certified Fraud Examiners for nineteen years and has received various professional honor and awards.

The Government does not challenge McHard's qualifications as an expert in business practices, accounting and fraud examination, and the Court concludes that she is qualified to testify in those areas.

### 3. Opinions #1 and #8

The Government challenges the reliability of opinions #1 and #8. It contends that McHard has made the bare assertion that her experience leads to her conclusions without providing an explanation of how and why any particular experience or training led her to those conclusions. Doc. 276 at 7. The Government then cites various cases where outside professionals such as accountants and lawyers helped disguise a fraudulent scheme, arguing that use of such professionals is not necessarily proof of intent to comply with the law. *Id*. In response, Defendants argue that McHard's more than twenty years of experience examining businesses allegedly engaged in criminal practices, along with her examination of thousands of pages of records specific to this case, is sufficient for her to link her experience to her conclusions in this case. They argue that the two challenged conclusions—that businesses engaged in illegal conduct typically do not invite scrutiny by voluntarily registering with government agencies or hiring outside accountants—are narrow and supported by McHard's experience. In oral argument, the Government largely conceded this last point, arguing that McHard likely could link her extensive experience to her opinions but that the Defendant's notice of expert testimony lacked enough information to demonstrate that link.

The Court concludes that McHard is qualified to state opinions #1 and #8, and that she may testify to those opinions at trial provided the Defendants can first lay the appropriate foundation explaining how McHard's training and experience led to her conclusions.

### 4. Opinion #9

In this portion of her testimony, McHard plans to testify as to the absence in this case of factual elements that were present in the prosecutions of other individuals under the Indian Arts

7

and Crafts Act ("IACA"), such as allegations that Defendants copied specific pieces of Native American jewelry or inscribed the initials of well-known Native American artists on the back of their non-Native jewelry. McHard reached this conclusion after reviewing indictments and plea agreements from other IACA cases. According to Defendants, McHard may state this opinion because after reviewing those documents she now understands how to identify the "badges of fraud" that are common in these types of cases. However, Defendants offer no evidence that McHard has any training or experience regarding fraudulent business practices in the Native American-style jewelry industry; rather, it appears that all her relevant knowledge stems exclusively from reviewing pleadings in a few other cases.

The Court concludes that this opinion should be excluded because it is not based on McHard's expertise as an accountant and fraud examiner. She has no background in Indian goods, sales of Indian products, practices of Indian jewelers, or fraud in the creation, marking, or sale of Indian jewelry. Defendants argue that this case is like *United States v. Channon*, Cr. No. 13-966 JCH/KK, 2015 WL 13651137 (D.N.M. Dec. 2, 2015) (unpublished), in which the Government objected to McHard's testimony regarding business data contained in a spreadsheet due to her lack of expertise in the retail context and in the specific accounting system at issue. In *Channon*, the court held that an expert's background and qualifications need not be perfect for her testimony to be admissible, but rather she need only have sufficient expertise to assist the jury. *Id*. at *5. The court also held that gaps in the expert's knowledge go to the weight to be given to her testimony, not its admissibility. *Id*. Defendants point to these statements to argue that McHard's ninth opinion should be admitted into evidence. However, *Channon* is distinguishable because in that case McHard's proffered testimony was still in her general wheelhouse—accounting fraud—and therefore there was a reliable basis for that testimony. In contrast, McHard's opinion #9 in this case has nothing to do with accounting or business fraud, but

rather fraud in the creation and sale of Native American-style jewelry. This is clearly outside McHard's area of expertise.

In addition, the Court concludes that McHard's opinion #9 is not relevant because evidence that defendants in other cases violated the IACA in one manner does not make it more or less likely the Ayshehs committed a conspiracy to commit an IACA violation in a different manner. The Defendants' argument—that the jury is entitled to know that the Government had different (or better) evidence in similar cases—is unconvincing. The question for the jury is not how the Government's proof in this case stacks up against the evidence it had in other cases, but rather whether it has met its burden of proof in *this* case, regardless of whether it had better or different evidence in another case.

Finally, opinion #9 should be excluded under Rule 403 because its very limited relevance is substantially outweighed by the danger of confusing the jury by introducing the facts in unrelated cases solely to compare the evidence against those defendants with the evidence against the Ayshehs. It also invites the jury to decide the case on an improper basis—that is, because other cases had different evidence, the jury should acquit because that same evidence is absent here.

**IT IS THEREFORE ORDERED** that:

(1)     Defendants' motions [**Docs. 242 and 280**] challenging the admissibility of the testimony of the Government's expert witness on Native American jewelry, Liz Wallace, are **DENIED**; and

(2)     the Government's motion [**Doc. 276**] challenging the admissibility of certain portions of the testimony of Janet McHard, the Defendants' expert accountant and fraud examiner, is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

_____
**UNITED STATES DISTRICT JUDGE**